***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson and the briefs and the arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or rehear the parties or their representatives. Accordingly the Opinion and Award of Deputy Commissioner Stephenson is modified as follows.
 ***********
The Full Commission finds as facts and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer on 15 December 1997.
3. Defendant-employer is self-insured with ITT Specialty Risk Services, Inc., as the servicing agent.
4. Plaintiff's average weekly wage on 15 December 1997 was such that his compensation rate was $512.00, the maximum rate for 1997.
5. On 15 December 1997 plaintiff sustained a compensable injury to his back arising out of and in the course of his employment with defendant-employer.
6. Stipulated Exhibit # 1 includes the following Industrial Commission Forms and Orders admitted into evidence: 18, 19, 61, Rule 607 request, 33, 33R, Amended 33R (filed 18 October 2000), 2 August 2000 Order by Tracy Weaver, and the 28 August 2000 Order by Tracey Weaver.
7. Defendant's 3 February 2000 Rule 607 response is admitted into evidence as Stipulated Exhibit # 2.
8. Dr. Holzknecht's 24 November 1998 Industrial Commission Form 25R is admitted into evidence as Stipulated Exhibit # 3.
9. The Hartford's 19 December 1997 letter to plaintiff is admitted into evidence as Stipulated Exhibit # 4.
10. Defendant-carriers' 19 December 1997 claim acknowledgement letter is admitted into evidence as Stipulated Exhibit # 5.
11. Diane Beane's note with Disability Benefits form is admitted into evidence as Stipulated Exhibit # 6.
12. Plaintiff's 24 April 1998 letter to John Argabright is admitted into evidence as Stipulated Exhibit # 7.
13. Three letters to plaintiff from John Argabright are admitted into evidence as Stipulated Exhibit # 8.
14. Plaintiff attendance records from defendant-employer for dates 5 October 1997 through 28 May 1998 are admitted into evidence as Stipulated Exhibit # 9.
15. Plaintiff's Employment Security Commission records are admitted into evidence as Stipulated Exhibit # 10.
16. Wage Records, instead of an Industrial Commission Form 22, are admitted into evidence as Stipulated Exhibit # 11.
17. Plaintiff's Answers to defendants Interrogatories are admitted into evidence as Stipulated Exhibit # 12.
18. All of plaintiff's medicals with respect to this claim are admitted into evidence.
19. The depositions of Dr. Phillip Holzknecht, Dr. Tom Giduz, Dr. George Brothers, Jr., Dr. Craig Derian, Dr. Frank Baniewicz, Dr. David Williams, Dr. Lloyd McCaskill, Dr. Aaron Allen, Brian Preston, Dr. Robert Rollins, Dr. Cecil Neville and Jeff Mercer were admitted into evidence.
20. The issues to be determined by this hearing involve what benefits to which plaintiff is entitled as a result of his compensable injury; and what penalties and/or sanctions are defendants to be assessed.
 ***********
Based upon all of the competent evidence of record, the undersigned makes the following additional
 FINDINGS OF FACT
1. On 15 December 1997 plaintiff was a 47 year old male employed by defendant-employer as a shipping technician. Plaintiff had been employed with defendant-employer for twenty-four years.
2. In September 1997 defendant-employer was downsizing and plaintiff was offered a buyout package, which he rejected. Instead plaintiff accepted a demotion from his management position as Production Scheduler to a Shipping Technician on 6 October 1997. He planned to work until his retirement in 2001.
3. Plaintiff's previous position of production scheduler paid $3,500.00 per month while the shipping technician job paid $2,885.00 per month. However, plaintiff was paid his higher management salary for six months following his demotion pursuant to company policy. The six-month period ended effective 7 April 1998.
4. Plaintiff's new duties as a shipping technician included driving an Elwood Parker forklift around the acres of the plant warehouse, locating shipments of glass, delivering glass to loading dock, setting up priority of trucks to load and administrative paperwork.
5. On 15 December 1997 plaintiff suffered a compensable injury to his back when he fell on the floor after his feet became tangled in metal shipping bands. Plaintiff reported the accident to his supervisor and an accident report was prepared. Defendant-employer referred plaintiff to Dr. David Williams for treatment.
6. Dr. Williams treated plaintiff on 16 December 1997 and diagnosed back strain and low back contusion. Dr. Williams prescribed pain medications and issued work restrictions of limited bending and stooping for one week. Plaintiff stayed out of work on 16 and 17 December, 1997 due to back pain. On 19 December 1997 Dr. Williams' nurse wrote a note excusing plaintiff for these days missed.
7. Plaintiff continued to experience back pain and also experienced testicular pain. When plaintiff informed defendant-employer of this, the plant nurse referred plaintiff to Scotland Memorial Hospital's Occupational Health Clinic for evaluation.
8. Plaintiff saw Dr. McCaskill on 18 December 1997 and Dr. Baniewicz at the Occupational Health Clinic on 22 December 1997 and 30 December 1997. The diagnosis was a back strain. Plaintiff's pain improved while out of work and on 30 December 1997 Dr. Baniewicz released plaintiff to return to work with restrictions of no twisting, bending or lifting greater than 15 pounds.
9. Plaintiff returned to work at defendant-employer on 5 January 1998. Plaintiff was paid his full salary by his employer for the time out of work from 16 December 1997 through 4 January 1998. Defendant-employer did not inform plaintiff about workers' compensation. Plaintiff had never lost time for a work related injury prior to this one.
10. On 13 January 1998 Dr. Baniewicz released plaintiff to full duty although plaintiff still experienced back pain. One of plaintiff's duties required him to climb up and down an Elwood Parker forklift several times a day. This caused plaintiff additional back pain.
11. Upon plaintiff's return to work, he scheduled all five of his available vacation weeks by taking off the weeks when he was scheduled to work second shift which was the busiest of the shifts. Plaintiff did this in order to try to alleviate his back pain which increased with increased work.
12. By Monday 23 March 1998 plaintiff had exhausted all of his vacation time. Plaintiff called in to defendant-employer and informed them he was hurting and could not work. Plaintiff did the same thing on 24-27 March, and 30-31 March. On 31 March 1998 plaintiff spoke with his supervisor and informed him his whole body hurt. Plaintiff was experiencing back and groin pain with the pain sometimes radiating into his left leg.
13. Also on 31 March 1998 Diane Beane, the plant nurse, mailed plaintiff a letter concerning the company's disability policy and included forms so plaintiff could apply for that disability. Ms. Beane did not mention workers' compensation and plaintiff did not complete the forms.
14. Plaintiff continued to remain out of work due to back pain resulting from his compensable injury. Plaintiff mailed Ms. Beane a letter dated 3 April 1998 stating he had been out of work due to his back injury. Plaintiff spoke to Ms. Beane on 6 April 1998 and Ms. Beane indicated she would arrange an evaluation by Scotland Orthopaedic. Ms. Beane scheduled plaintiff with Dr. Holzknecht on 30 April 1998.
15. Plaintiff was unable to work due to back pain and informed his supervisor he would remain out of work until his scheduled appointment with Dr. Holzknecht. Plaintiff was not informed until mid April that he had to provide doctors' excuses for his absences.
16. On 10 April 1998 defendant-carrier sent plaintiff a Form 61 denying that plaintiff's "current condition" was related to his 15 December 1997 compensable injury. On 23 April 1998 the Human Resource Manager wrote plaintiff a letter advising him effective 17 April 1998 that plaintiff's pay had been stopped because he had not provided medical authorization for his absences. Plaintiff was also advised his continued absences were unauthorized.
17. Dr. Holzhnecht examined plaintiff on 30 April 1998. Review of prior x-rays demonstrated some degenerative disc disease at L5/S1. Physical examination revealed tenderness over the lumbar spine and paraspinal muscles, as well as some numbness over the right great toe. Dr. Holzhnecht recommended a MRI, physical therapy, medication and McKenzie exercises. Dr. Holzhnecht approved light duty work only and placed sedentary work restrictions on plaintiff with no repetitive climbing, bending or lifting. Defendants approved the MRI but would not approve physical therapy.
18. The 7 May 1998 MRI revealed degenerative disc disease at L4-5 with a large Schmorl's node herniating into the superior aspect of L4 vertebral body. At L4-5 there was a diffuse disc bulge producing only mild central stenosis.
19. Plaintiff attempted to get work excuses for the period of 1 April 1998 through 29 April 1998 from Dr. Holzhnecht but was unable to do so because Dr. Holzhnecht's treatment did not begin until 30 April 1998.
20. In May 1998 plaintiff's supervisors informed plaintiff they had work available within his restrictions. On 5 May 1998 the Human Resources Manager spoke with plaintiff regarding the importance of obtaining medical authorizations for days missed. When plaintiff returned to work on 5 May 1998 he performed clerical work within his restrictions. Later defendant-employer informed plaintiff Dr. Holzhnecht had agreed plaintiff could go back on a buggy to perform his job. However, Dr. Holzhnecht had not approved a position where plaintiff would be getting up and down several times on the buggy.
21. On 14 May 1998 the Human Resource Manager informed plaintiff any further unauthorized absences would result in disciplinary action. The greater weight of the evidence is that plaintiff's back pain from his compensable injury greatly hindered the performance of his duties. Defendant-employer assigned someone to assist plaintiff so he would not have to get on and off the buggy, but on 15 May 1998 the person only assisted plaintiff for thirty minutes before being moved to another job.
22. Plaintiff worked six hours on 15 May 1998 and informed his supervisor he had such severe back and testicular pain he needed to go home. Plaintiff's supervisor informed plaintiff he would have to ask Ms. Beane since plaintiff was on light duty. Plaintiff completed his eight-hour shift.
23. Plaintiff was unable to work from 18 May 1998 through 22 May 1998. Although plaintiff did fail to call in during that week, the greater weight of the evidence is that the reason plaintiff was unable to work was due to the continuing pain from his compensable injury. Plaintiff was terminated from defendant-employer effective 28 May 1998 for failing to report to work or have an excuse why.
24. Plaintiff has not received any workers' compensation benefits as of the close of the record. In 1999 plaintiff was approved for unemployment benefits.
25. Following plaintiff's termination, defendants provided plaintiff with some medical care. Plaintiff received epidural injections, which did not improve his pain. A functional capacities examination on 19 October 1998 indicated plaintiff was capable of light-medium work for eight hours. On 24 November 1998 plaintiff was released from Dr. Holzknecht's care with a five percent (5%) permanent partial disability rating. However, the greater weight of the evidence is that plaintiff was not at maximum medical improvement at that time due to increased pain. Dr. Holzknecht recommended a follow-up with an orthopaedic surgeon.
26. Subsequently plaintiff sought treatment from Dr. Derian, an orthopaedic surgeon and Dr. Allen, a neurologist. Plaintiff's mental condition had declined and he began abusing alcohol in an effort to improve his pain. Dr. Derian recommended plaintiff immediately cease relying on alcohol for pain control and plaintiff did so. Dr. Derian diagnosed plaintiff with an interosseous disc herniation/extrusion into the vertebral body of L5 and endplate disruption of the superior L5 vertebral body. Dr. Derian did not recommend surgery due to the history of alcoholism and because test revealed plaintiff has osteoporosis.
27. Dr. Derian rated plaintiff with a twenty percent (20%) permanent partial impairment rating and in November 2000, referred plaintiff to Dr. Giduz, a psychiatrist, for treatment of plaintiff's chronic pain, depression and alcoholism related to the plaintiff's fall of 15 December 1997.
28. In November 2000 plaintiff saw Dr. Cecil Neville for an IME. The examination and review of the tests and records indicated plaintiff suffers from degenerative disc disease and a Schmorl's node. Dr. Neville indicated plaintiff was capable of standing one hour, driving for two hours, sitting for two hours, walking one quarter of a mile and lifting 35-40 pounds. Dr. Neville recommended future treatment for plaintiff to include treatment for depression, alcoholism, anti-inflammatory medications and aggressive back rehabilitation program.
29. At the time plaintiff began treating with Dr. Giduz in January 2001, plaintiff was exhibiting several symptoms of depression such as poor concentration, difficulty sleeping, poor appetite, loss of interest in activities, poor motivation and general irritability. Dr. Giduz treated plaintiff with various anti-depressant medications but plaintiff did not take them on a regular basis. Plaintiff is still under Dr. Giduz care and treatment.
30. On 31 May 2001 Dr. Robert Rollins examined plaintiff for a psychiatric IME. Dr. Rollins is a forensic psychiatrist at Dorothea Dix Hospital who diagnosed plaintiff with major depressive disorder and pain disorder with psychological factors and alcohol dependence.
31. Although plaintiff experienced several stressors in life such as the death of his father, his sons' divorce, the separation and reconciliation with his own wife, his mother's diagnosis of Alzheimer's disease, and his own demotion with defendant-employer, these were all prior to plaintiff's compensable injury on 15 December 1997. Up until plaintiff's compensable injury he had been able to work and perform his duties. He accepted a demotion rather than a buy-out in order to keep working until his planned retirement. The greater weight of the evidence is that the continuing pain and inability to work, and the resulting depression, were caused by, or aggravated by, the compensable injury.
32. Plaintiff desires to work and performs very limited duties at his sisters' business, Bobby Clarks Wrecker, Garage and Salvage. Plaintiff also handles some of his mother's business affairs regarding the management of rental property. However, plaintiff performs these functions on a limited, irregular basis, according to his physical and mental condition at the time.
33. The greater weight of the evidence is that plaintiff is not at maximum medical improvement and needs further treatment for chronic pain and depression.
34. Plaintiff has not been provided any vocational rehabilitation by defendants. Such rehabilitation could be helpful if plaintiff's physicians currently approve of this approach. Plaintiff has not sought employment. Although defendant-employer has hired several technicians that perform some aspects of plaintiff's old job, there is no evidence such a position was offered to plaintiff, approved by his physicians, or even fits within plaintiff's current restrictions.
35. The greater weight of the evidence is that except for a few weeks on limited duty in early 1998, plaintiff had essentially been unable to work or earn wages since the 15 December 1997 compensable injury. Plaintiff was either paid or used earned vacation leave, but from 23 March 1998 plaintiff received no wages because he had exhausted all his earned leave.
36. Due to the many depositions necessary and the expert opinions required to resolve the issues in this case, a hearing was required to determine these issues. Although defendant-employers' method in handling plaintiff's case may have contributed to his stress, defendant-employer's actions do not justify sanctions.
 ***********
The foregoing findings of facts engender the following additional:
 CONCLUSIONS OF LAW
1. On 15 December 1997 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As a result of plaintiff's compensable injury, plaintiff is entitled to temporary total disability at his compensation rate of $512.00 per week from 23 March 1998 and continuing until further Order of the Commission. Defendant is entitled to a credit for all wages paid to plaintiff after 23 March 1998 while on limited or light duty. Defendants are further entitled to a credit for any unemployment benefits plaintiff received following his compensable injury. N.C. Gen. Stat. §§ 97-29,97-42.
3. Plaintiff is entitled to have defendants provide all medical treatment arising from the 15 December 1997 injury to the extent it tends to affect a cure, give relief or lessen plaintiff's disability. This includes treatment for plaintiff's period of depression. N.C. Gen. Stat. §§ 97-25, 97-25.1.
4. Plaintiff is not entitled to attorney fees or costs; defendants are not subject to sanctions. N.C. Gen. Stat. §§ 97-18, 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to a reasonable attorney fee herein approved, defendants shall pay to plaintiff $512.00 per week from 23 March 1998 and continuing until further Order of the Commission, subject to a credit for defendants for those wages paid after 23 March 1998 and for any amounts plaintiff received from unemployment. Those amounts have accrued and shall be payable in a lump sum.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable injury on 15 December 1997, for so long as examinations, evaluations, and treatment may be reasonably necessary to affect a cure, give relief or lessen plaintiff's period of disability. This includes treatment for plaintiff's depression.
3. A reasonable attorney's fee of twenty-five percent (25%) of the lump sum compensation awarded plaintiff in Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be deducted from those amounts and payable directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be payable directly to plaintiff's counsel.
4. Defendant shall pay the costs.
This the 30th day of January, 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER